IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| YACHT BASIN PROVISION COMPANY, INC., *d/b/a* PROVISION COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | No. 2:22-cv-02180-DCN ) ) ) **ORDER** |
| INLET PROVISION COMPANY; HOT FISH CLUB, LLC, *d/b/a* INLET PROVISION COMPANY; KATHY BATES; PHILLIP BATES; CYNDI MORAN; and PKC INVESTMENTS, LLC, | ) ) ) ) ) ) |
| Defendant. | ) ) |

The following matter is before the court on plaintiff Yacht Basin Provision Company, Inc's ("Yacht Basin") motion to strike counterclaims and affirmative defenses, ECF No. 60. For the reasons set forth below, the court grants in part and denies in part the motion.

**I.  BACKGROUND**

Yacht Basin is "an iconic and established restaurant located on the edge of the Intracoastal Waterway in Southport, North Carolina." ECF No. 46, 2d. Amend. Compl. ¶ 17. Yacht Basin alleges that it had obvious signage referencing the goods and services under the "Provision Company" mark in the United States as early as June 1993. Id. ¶¶ 18–19. As a result, Yacht Basin claims it owns common law rights in the "Provision Company" mark. Id. Yacht Basin also alleges that it owns U.S. Trademark Registration for the "Yacht Basin Provision Co." mark issued on July 4, 2000, and applied for the "Provision Company" mark on April 2, 2021. Id. ¶¶ 21–22.

1

Defendant Inlet Provision Company ("Inlet") is a casual restaurant located on the edge of the Intracoastal Waterway in the nearby town of Murrells Inlet, South Carolina. Id. ¶ 24.  Inlet also has the rustic look and feel of an old trading post or fish and tackle store, similar to Yacht Basin, but allegedly did not start using the "Inlet Provision Company" designation in connection with their goods and services until 2019.  Id. ¶¶ 25, 27.

Yacht Basin first notified Inlet of the actual confusion—where customers believed Inlet was Yacht Basin's second location and not a separate business—through a letter dated April 22, 2021.  Id. ¶¶ 28–29.  Nevertheless, Inlet refused to stop using the similar "Inlet Provision Company" designation on its goods and services that are identical to Yacht Basin's goods and services.  Id. ¶ 31.  Yacht Basin alleges that Inlet's activities have caused and will continue to damage Yacht Basin by harming its sales, goodwill, and reputation.  Id. ¶¶ 38–39.

On June 28, 2021, Yacht Basin filed its complaint against Inlet in the Eastern District of North Carolina seeking injunctive relief and damages for trademark infringement, unfair competition, cybersquatting, unfair and deceptive trade practices, and unjust enrichment.  ECF No. 1.  On July 27, 2021, Yacht Basin amended its complaint to include Kathy Bates, Phillip Bates, and Cyndi Moran as defendants because they are co-owners and partners of Inlet (collectively with Inlet, "defendants").  ECF No. 7 ¶¶ 3–5.  On September 24, 2021, defendants filed a motion to dismiss for lack of jurisdiction, or in the alternative, a motion to transfer the case to the District of South Carolina, and the Eastern District of North Carolina granted the motion to transfer on December 13, 2021.  ECF Nos. 21, 33.  Following the transfer to this court, Yacht Basin

filed a second amended complaint on March 9, 2022. 2d Amend. Compl. On September 13, 2022, defendants filed an amended answer and alleged thirty-two affirmative defenses in response to Yacht Basin's second amended complaint. ECF No. 57, Amend. Answer at 7–12. Defendants also filed their own counterclaims against Yacht Basin. Id. at 13–17.

Yacht Basin filed this motion to strike the amended answer to the amended complaint on September 27, 2022. ECF No. 60. Defendants responded in opposition to the motion on October 11, 2022, ECF No. 61, and Yacht Basin replied to that response on October 18, 2022, ECF No. 65. This court held a hearing on this motion on November 15, 2022. ECF No. 68. As such, the motion is fully briefed and ripe for the court's review.

## II.  STANDARD

Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citations omitted); see also Brown v. Inst. For Fam. Centered Servs., Inc., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are . . . granted only for egregious violations."). When presented with

3

a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." Clark v. Milam, 152 F.R.D. 66, 71 (S.D. W. Va. 1993). Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings. According to Rule 7, a document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a).

"[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt." Barnes v. District of Columbia, 289 F.R.D. 1, 6 (D.D.C. 2012) (citations omitted). "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money." Gibson v. Confie Ins. Grp. Holdings, Inc., 2017 WL 2936219, at *12 (D.S.C. July 10, 2017). "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion: "decisions that are reasonable, that is, not arbitrary, will not be overturned." Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007) (quoting Seay v. TVA, 339 F.3d 454, 480 (6th Cir. 2003)).

### III.  DISCUSSION

Yacht Basin filed the instant motion to strike defendants' counterclaims and affirmative defenses. ECF No. 60. Specifically, Yacht Basin alleges that it seeks to streamline the affirmative defenses by requesting the court strike fourteen affirmative defenses "which are wholly unsupported in the Amended Answer and Counterclaims or are otherwise not plausibly related to this litigation, and to strike the mirror-image counterclaims as redundant to [Yacht Basin's] affirmative claims." ECF No. 60-1 at 3.

4

Yacht Basin seeks to strike defendants' Affirmative Defense Nos. 4, 5, 7, 14, 19, 22–24, and 27–32 and all counterclaims as set forth in defendants' amended answer, ECF No. 57. Id. at 1. In response, defendants withdrew, without prejudice, Affirmative Defense Nos. 4, 7, and 27–32, and the motion to strike those defenses is now moot. ECF No. 61 at 1. Defendants oppose Yacht Basin's motion to strike Affirmative Defense Nos. 5 (unclean hands), 14 (assignment of rights), 19 (inequitable conduct, prosecution misconduct, and fraud), 22 (implied consent), 23 (acquiescence), and 24 (restraint of trade), as well as the motion to strike the counterclaims. Id. The court considers the remaining contested affirmative defenses and counterclaims in turn.

### A. Affirmative Defenses

The court first considers the appropriate pleading standard for each of the affirmative defenses and then determines whether the affirmative defenses have adequately met that standard such that they may survive the motion to strike. First, the court examines those affirmative defenses based upon allegations of fraud which must meet the pleading standard set forth by Rule 9(b). Fed. R. Civ. P. 9(b). Second, the court examines those remaining affirmative defenses under the pleading standard for Rule 8(c). Fed. R. Civ. P. 8(c).

#### 1. Defenses Sounded in Fraud

The Fourth Circuit has held "that defendants must satisfy Rule 9(b) when they plead affirmative defenses sounding in fraud." Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc., 888 F.3d 696, 704 (4th Cir. 2018). Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In determining whether an affirmative defense is sounded in fraud, the court "look[s] beyond each defense's label to its substance in order to ascertain if it actually sounds in fraud." Just Born II, 888 F.3d at 705 (citing Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 629 (4th Cir. 2008)).

"The Rule 9(b) standard requires a party to, 'at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. These facts are often referred to as the who, what, when, where, and how of the alleged fraud.'" Id. at 705 (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).

Defendants claim that three of the affirmative defenses are grounded in Yacht Basin's alleged fraudulent activity:

> **FIFTH AFFIRMATIVE DEFENSE:** Plaintiff's causes of action fail as Plaintiff has unclean hands.
>
> **NINETEENTH AFFIRMATIVE DEFENSE:** The claims asserted in the Second Amended Complaint, in whole or in part, fail as Plaintiff engaged in inequitable conduct, fraud, or prosecution misconduct in obtaining any rights to its alleged trademark.
>
> **TWENTY-FOURTH AFFIRMATIVE DEFENSE:** Plaintiff's causes of action fail as a matter of law as they are designed to improperly restrain trade in violation of anti-trust laws.

Amend. Answer at 8, 10. But in their amended answer defendants pled no facts whatsoever in support of these allegations.[1] The closest defendants get to pleading

---

[1] Defendants previously amended their answer on September 13, 2022, forty days after defendants filed the original answer; therefore, defendants do not have the right to amend their pleading as a matter of course within twenty-one days of service of a motion under Rule 12(f). Fed. R. Civ. P. 15(a)(1). Nevertheless, the court reminds defendants

relevant facts is in their response in opposition to the motion to strike, where they assert these three claims "directly relate[] to the controversy at hand, as they go to Defendants' good faith belief that [Yacht Basin's] trademark application was not proper at the time it was submitted." ECF No. 61 at 13. Since these claims are based on allegations of Yacht Basin's fraudulent behavior, defendants must plead those claims with the particularity required by Fed. R. Civ. P. 9(b). See id. These claims do not meet that standard.

In their response in opposition, defendants argue that until they "are able to obtain the trademark's complete file history in discovery, depose [Yacht Basin], and those persons responsible for prosecuting the trademark application, Defendants necessarily will not have the documentary evidence needed to prove this contention." ECF No. 61 at 13. But Rule 9(b) is a _pleading_ standard, and presumably, defendants must currently have at least some basis to claim that Yacht Basin engaged in fraudulent behavior. Indeed, in their response, they argue that Yacht Basin's pending "Provision Company" trademark was sought through fraud because defendants "have already discovered that the United States Patent and Trademark Office has determined that the term 'provision' is 'merely descriptive of a feature of the applicant's services.'" ECF No. 61 at 11–12 (quoting ECF No. 61-3 at 3). Further, they argue that there are a "vast number of other United States entities doing business with 'Provision Company' in their name. Id. at 13. Thus, defendants believe that "[Yacht Basin] knew or should have known it did not have exclusive rights to the 'Provision Company' mark at the time it submitted its application

---

that under the Federal Rules of Civil Procedure Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Defendants plead new facts and arguments in their response in opposition to the motion to strike brought under Rule 12(f), without seeking to amend their answer to meet the applicable pleading standard.

7

and misrepresented that it had exclusive rights to this mark in its application." Id. If that is indeed the case, then defendants argue that Yacht Basin falsified its declaration attesting to exclusive rights in the mark applied for. Id.

Nevertheless, in ruling upon the motion to strike the affirmative defenses sounding in fraud the court does not reach the merits of the claims. Instead, the court considers these facts under the particularity standard articulated by Fed. R. Civ. P. 9(b) to evaluate the motion to strike for each of the three affirmative defenses in turn. In other words, the court considers if defendants alleged with particularity the circumstances constituting fraud, including the relevant elements of the claims, for the Affirmative Defense Nos. 5, 19, and 24 such that the defense survives the motion to strike. See id.

First, defendants allege an affirmative defense of unclean hands. The unclean hands "doctrine is rooted in the historical concept of [a] court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). Thus, it requires that a party seeking equitable relief has "acted fairly and without fraud or deceit as to the controversy in issue." Id. at 814–815. "The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" Henderson v. United States, 575 U.S. 622, 625 n.1 (2015) (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933)). Here, the "Provisions Company" trademark is in dispute and defendants allege that Yacht Basin sought the mark fraudulently and then brought this case to determine the validity of that trademark.

As a preliminary matter, the contested trademark registration for the "Provision Company" mark has not yet been granted. 2d. Amend. Compl. ¶ 22. Thus, alleging fraud and unclean hands because of that applied-for trademark registration is a dispute that is not yet ripe, even if the dispute over whether Yacht Basin owns a common law trademark in "Provision Company" is ripe. See, e.g., Abbott Labs. v. Gardner, 387 U.S. 136 (1967). On that basis alone, the court strikes this first claim.

Moreover, it is unlikely defendants can show this conduct rises to the level of fraud—a preliminary requirement to bring an unclean hands claim. "Regardless of any knowledge an applicant may have had of another's use, if an applicant believes that it was the owner of the mark sought to be registered at the time it made application for registration, no fraudulent intent can be inferred from statements made in the application declaration." Daniel J. Quirk, Inc. v. Village Car Co., 120 U.S.P.Q.2d 1146, 2016 WL 6136609, at *8 (T.T.A.B. Sept. 27, 2016) (listing cases where the Patent and Trademark Office ("USPTO") found no fraudulent intent from statements made in the application declaration). Therefore, if Yacht Basin believed it was the owner of the mark, the court cannot infer fraud from the application declaration, even if Yacht Basin knew of others' use of a similar mark. See Mayson-Dixon Strategic Consulting, LLC v. Mason-Dixon Polling & Strategic Consulting, Inc., 324 F. Supp. 3d 569, 577 (D. Md. 2018). Without more, defendants have not pled with particularity the elements for an unclean hands claim, even if that claim were ripe. The court grants the motion to strike as to the fifth affirmative defense.

Second, under Affirmative Defense No. 19, defendants claim Yacht Basin engaged in inequitable conduct, fraud, or prosecution misconduct in obtaining any rights

to its alleged trademark. The court assumes this affirmative defense is brought under the Lanham Act, 15 U.S.C. § 1115(b)(1), though defendants fail to cite to any legal basis whatsoever to support their affirmative defense. To show a trademark was obtained fraudulently, defendants must show Yacht Basin "knowingly made false, material misrepresentations of fact and intended to deceive the" USPTO in its application. Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp., 148 F.3d 417, 420 (4th Cir. 1998). As part of the registration process, a trademark registrant must affirm, under oath, that he "believes" himself to be the owner of the mark sought to be registered and that "to the best of his knowledge and belief" no other person has the right to use the mark in commerce. 15 U.S.C. §§ 1051(a)(3)(A), (A)(3)(D). "The oath is phrased in terms of a subjective belief, such that it is difficult to prove fraud so long as the affiant or declarant has an honestly held, good faith belief." Resorts of Pinehurst, 148 F.3d at 420 (emphasis, citations, and internal ellipses omitted).

In claiming fraud, defendants state that "[Yacht Basin] knew or should have known it did not have exclusive rights to the 'Provision Company' mark at the time it submitted its application and misrepresented that it had exclusive rights to this mark in its application." ECF No. 61 at 13. That misstates the standard as one based on objective belief when it is a subjective belief as to ownership that matters in determining whether the trademark application constituted fraud. So far, defendants have pled no facts in either their answer or their opposition to the motion to strike that support the assertion that Yacht Basin did not subjectively believe it owned the "Provision Company" mark. See generally Amend. Answer; ECF No. 61. Defendants have failed to state with

10

particularity any facts that support this claim, and the court grants the motion to strike as to the nineteenth affirmative defense.

Third, under Affirmative Defense No. 24, defendants bring the restraint-of-trade claim based upon Yacht Basin's alleged fraudulent acts.[2]  As a preliminary matter, the court considers this antitrust claim as one based in fraud in large part because defendants lump it with the other two affirmative defenses based in fraud and reliant upon alleged facts asserting fraud.  ECF No. 61 at 13.  Therefore, this affirmative defense must meet the heightened standard set out by Rule 9(b).  Fed. R. Civ. P. 9(b).  But defendants have not pled with particularity facts that enable defendants to raise an antitrust claim as a defense to a trademark protection suit, nor have they pled with particularity the elements of a restraint-of-trade claim.  The court examines each barrier to this claim in turn.

Trademark defendants may assert that the plaintiff's attempt to enforce its trademark rights violates the antitrust laws.  But, "[g]ood faith efforts to enforce trademark rights do not violate the Sherman Act."  Blue Cross & Blue Shield Ass'n v. Grp. Hospitalization & Med. Servs., Inc., 744 F. Supp. 700, 719 (E.D. Va. 1990).  "Indeed, vigorous enforcement of trademark rights is exactly the 'sort of aggressive competition and promotion that antitrust law seeks to protect.'"  Id. (quoting Drop Dead Co. v. S.C. Johnson & Son, Inc., 326 F.2d 87, 96 (9th Cir. 1963), cert. denied, 377 U.S. 907 (1964)).  Importantly, the Supreme Court has explicitly held that the First Amendment right to petition the government immunizes such litigation from antitrust liability with an exception for "sham" litigation (the "Noerr-Pennington Doctrine").  See

---

[2] Defendants fail to note under which antitrust law the restraint of trade allegation is brought under, so the court assumes it is brought pursuant to the Sherman Act, 15 U.S.C. § 1.

United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961).

To satisfy the exception that allows antitrust liability for a trademark litigation claim, the party bringing the claim must satisfy an onerous two-prong test. Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60–61 (1993). First, the claimant must show that a lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Id. Second, the claimant must show that the lawsuit was brought in order "to interfere directly with the business relationships of a competitor . . . through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." Id. (emphases in original). After threading the needle to meet the burden of this test, the trademark litigation claimant must still plead facts that meet the required elements of a restraint-of-trade claim. Pursuant to the Sherman Act, a restraint-of-trade antitrust violation requires the party to prove, and therefore plead: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade. 15 U.S.C. § 1; Robertson v. Sea Pines Real Est. Cos., Inc., 679 F.3d 278, 284 (4th Cir. 2012).

Defendants have not pled with particularity facts that demonstrate the case is "sham" litigation such that it confers antitrust liability for a trademark dispute claim, and therefore, this affirmative defense is unavailable. Even if the restraint-of-trade affirmative defense is considered under the lower pleading standard set forth by Rule 8(c)—which requires "fair notice," as described in the next section—this claim is still barred by the Noerr-Pennington Doctrine. Furthermore, had defendants met their burden under the doctrine's two-part test, they have clearly not met their burden to plead facts

12

sufficient to meet the elements for a restraint of trade antitrust claim. There is no conspiracy here, much less one that imposed an unreasonable restraint of trade since defendants have not pled facts that show the pending trademark was unreasonable.

As such, the court finds these allegations do not meet the applicable pleading standard for allegations of fraud and grants the motion to strike Affirmative Defenses Nos. 5, 19, and 24.

### 2. Federal Rules of Civil Procedure Rule 8(c)

The court scrutinizes the remaining affirmative defenses to determine whether defendants have met the applicable pleading standard. Specifically, the court examines whether Affirmative Defense Nos. 14 (assignment of rights), 22 (implied consent), and 23 (acquiescence) are adequately pled to survive the motion to strike:

> **FOURTEENTH AFFIRMATIVE DEFENSE:** Plaintiff has assigned the rights to the trademark to a third-party and lacks standing to bring this action.
>
> **TWENTY-SECOND AFFIRMATIVE DEFENSE:** Plaintiff's cause of action fail as a matter of law as Plaintiff has given implied consent to Defendants conduct.
>
> **TWENTY-THIRD AFFIRMATIVE DEFENSE:** Plaintiff's causes of action are barred under the doctrine of acquiescence.

Amend. Answer at 9–10.

The Supreme Court and the Fourth Circuit have not yet clarified the applicable pleading standard for affirmative defenses in the wake of Twombly and Iqbal.[3] See, e.g., Just Born II, 888 F.3d at 700 n.5 ("Although applicability of this [Twombly/Iqbal]

---

[3] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545–46, 570 (2007) (holding the applicable pleading standard requires a plaintiff to plead facts that state a claim to relief that is plausible on its face); Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (holding the pleading standard set in Twombly applies to all civil actions, not just antitrust actions).

standard to affirmative defenses continues to divide courts, [the Fourth Circuit] need not address it in this case."). District courts in the District of South Carolina are divided on whether the applicable standard is that of Twombly and Iqbal or a lower standard, though recent decisions appear to weigh in favor of applying a lower pleading standard to affirmative defenses. Compare Monster Daddy LLC v. Monster Cable Products, Inc., 2010 WL 4853661, at *12–16 (D.S.C. Nov. 23, 2010) (finding Twombly-Iqbal standard applicable to affirmative defenses), with Cohen v. SunTrust Mortgage, Inc., 2017 WL 1173581, at *2–3 (D.S.C. Mar. 30, 2017) (finding Twombly-Iqbal standard inapplicable to affirmative defenses, instead requiring only fair notice that describes the defense in general terms), Hand Held Prods., Inc. v. Code Corp., 2017 WL 2537235, at *5–6 (D.S.C. June 9, 2017) (same), and Doosan Mach. Tools Am. Corp. v. Mach. Sols., Inc., 2018 WL 1374066, at *4 (D.S.C. Mar. 19, 2018) (same). This court holds that the fair notice pleading standard applies to affirmative defenses.

That lower pleading standard is quite flexible. Rule 8(b)(1)(A) of the Federal Rules of Civil Procedure provides that "a party must . . . state in short and plain terms its defenses to each claim asserted against it," and Rule 8(c)(1) provides that "a party must affirmatively state any avoidance or affirmative defense." "Prior to the Supreme Court's decisions in Twombly and Iqbal, the United States Court of Appeals for the Fourth Circuit held that general statements of affirmative defenses were sufficient provided they gave plaintiffs fair notice of the defense." Francisco v. Verizon S., Inc., 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010) (citing Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004)). In Machinery Solutions, the District of South Carolina found that the defendant's affirmative defenses met the lower pleading standard and provided the

plaintiff with the requisite fair notice to survive the motion for judgment on the pleadings even though the claimed defenses failed to state <u>any</u> facts with particularity.[4] See Machinery Sols., 2018 WL 1374066, at *4. Given that decision, the defendants' remaining affirmative defenses, even lacking any relevant facts whatsoever, still satisfy the fair notice pleading standard.

Without reaching the particularities of each of the remaining affirmative defenses, the court denies the motion to strike Affirmative Defense Nos. 14 (assignment of rights), 22 (implied consent), and 23 (acquiescence). Defendants have provided Yacht Basin fair notice as to those affirmative defenses and under the fair notice pleading standard, nothing else is required.[5]

### B. Mirror-Image Counterclaims

Defendants also seek to bring two counterclaims: (1) declaratory judgment of invalidity asking the court to declare that Yacht Basin's claimed rights to exclusive use of

---

[4] Specifically, the defendants in that case asserted the affirmative defenses of unclean hands, estoppel, and waiver using the following language:

> Plaintiff is precluded from any recovery in this Complaint by reason of the unclean hands of Doosan Infracore America Corporation. (ECF No. 11 at 4 ¶ 36.)
>
> Plaintiff is estopped from asserting the claims set out in the Complaint. (Id. ¶ 37.)
>
> Plaintiff has waived any right it might have on any of the claims asserted against Defendants []. (Id. ¶ 38.)

Mach. Sols., 2018 WL 1374066, at *4. The court held that "[c]onsistent with its recent decisions, this court is satisfied that Defendants' affirmative defenses as stated satisfy the relevant pleading requirements." Id.

[5] Nevertheless, the court encourages defendants to amend their answer to include a semblance of support for their claims as is required by Rule 11. Fed. R. Civ. P. 11(b).

the term "Provision Company" in connection with restaurants are invalid; and (2) declaratory judgment of non-infringement asking the court to declare that the use of the term "Provision Company" in connection with a restaurant is not likely to cause any consumer confusion with any restaurant owned by Yacht Basin.  Amend. Answer at 15–17.  Yacht Basin cites the mirror image rule and requests the court strike these two counterclaims as redundant and duplicative of the claims in the original complaint.  ECF No. 60-1 at 6–8.  In its second amended complaint, Yacht Basin clearly requests that the court "permanently enjoin Defendants . . . from using the INLET PROVISION COMPANY designation or any other designation . . . which is likely to cause confusion, mistake, or deception with respect to [Yacht Basin's] PROVISION COMPANY Marks."  2d. Amend. Compl. at 14.  It is apparent there is substantial overlap between the amended complaint and the counterclaims, and the pleadings seek injunctive relief under similar bases.

Yacht Basin explicitly makes this connection in its motion to strike, saying "[d]efendants' mirror-image counterclaims add nothing to the litigation and are duplicative of [Yacht Basin's] claims for trademark infringement and unfair competition," and are also duplicative of defendants' affirmative defenses.  ECF No. 60-1 at 6.  In response, defendants argue that their counterclaims "are necessary to preserve a remedy for defendants to clear the cloud of litigation in this case and do not reiterate the same legal issue as [Yacht Basin's] claims."  ECF No. 61 at 4–5.  Defendants argue that "[t]he threat of future litigation brought by [Yacht Basin] is real, and is evidenced by [Yacht Basin] bringing a cancellation proceeding against the real owner of the PROVISION MARK."  Id. at 5.  Defendants clarify that their counterclaims are

necessary because Yacht Basin's complaint merely seeks to litigate "the narrow issue of whether defendants infringed upon [Yacht Basin's] trademark," whereas defendants "counterclaim seeks a determination that [Yacht Basin's] trademark is invalid in its entirety," meaning Yacht Basin could not "claim trademark protection against any other entity also doing business with the word 'provision' in its name."  Id. at 7.  In reply, Yacht Basin argues that defendants have "failed to refute [Yacht Basin's] arguments regarding their mirror-image counterclaims and misstate the law."  ECF No. 65 at 2.  Specifically, Yacht Basin refutes defendants' only attempt to explain how their counterclaims are distinct from the claims in the amended complaint, explaining that the first element it must prove for a trademark infringement claim is that Yacht Basin does in fact own a valid, protectable trademark.  ECF No. 65 at 6.

      As the Fourth Circuit has explained, a court should adjudicate declaratory judgment actions "when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted).  Many district courts have dismissed counterclaims that are duplicative of affirmative defenses.  See, e.g., XL Specialty Ins. Co. v. Truland, 2014 WL 7345200, at *2 (E.D. Va. Dec. 23, 2014) (dismissing an amended counterclaim because the affirmative defense and the counterclaim were repetitious); Biltmore Co. v. NU U, Inc., 2016 WL 749474, at *2 (W.D.N.C. Dec. 30, 2016) ("Pursuant to its discretion, a court may dismiss a declaratory counterclaim that is the 'mirror image' of the Complaint,"); Penn Mut. Life Ins. Co. v. Berck, 2010 WL 3294305, at *3 (D. Md. Aug.

20, 2010) ("This type of double pleading is not the purpose of a declaratory judgment."); Penn Mut. Life Ins. Co. v. Greatbanc Trust Co., 2010 WL 2928054, at *5 (N.D. Ill. July 21, 2010) ("[C]ounterclaims that mimic affirmative defenses are no less duplicative [than] counterclaims that mirror the plaintiff's request for declaratory relief."); Boone v. MountainMade Found., 684 F. Supp. 2d 1, 12 (D.D.C. 2010) (compiling cases supporting dismissal of duplicative counterclaims).  This court examined this issue in Friends of DeReef Park v. National Park Service and found that where the declaratory judgment counterclaims simply re-assert and are parallel to its affirmative defenses to the plaintiff's claims, it would be proper for the court to refuse to exercise jurisdiction over the counterclaim.  2015 WL 12807800, at *10 (D.S.C. May 27, 2015).

The court is persuaded by Yacht Basin's argument that the counterclaims are fundamentally duplicative of the claims in the complaint and the court declines to exercise jurisdiction over them.  Specifically, the issue in question—whether Yacht Basin in fact owns a trademark over "Provision Company"—will be fully briefed and considered in the underlying trademark dispute.  As such, the court grants the motion to strike defendants' counterclaims.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

                                        DAVID C. NORTON
                                      UNITED STATES DISTRICT JUDGE

**November 17, 2022**
**Charleston, South Carolina**